SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV–16–299

| | |
|---|---|
| ANTHONY VILLAROS<br>APPELLANT | **Opinion Delivered:** September 14, 2016 |
| V. | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. JV-2014-23] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br>APPELLEES | HONORABLE LEIGH ZUERKER, JUDGE |
| | AFFIRMED |

### RITA W. GRUBER, Judge

Appellant, Anthony Villaros, appeals from an order of the Sebastian County Circuit Court terminating his parental rights to his daughter, R.A., born August 11, 2012. He contends on appeal that the evidence was insufficient to support the circuit court's decision that termination was in R.A.'s best interest. We find no error and affirm the circuit court's order.[1]

The Arkansas Department of Human Services (DHS) removed R.A. from appellant's custody on January 7, 2014, when appellant was arrested for domestic battery for allegedly attacking his girlfriend after having become intoxicated. R.A.'s mother lived in California, and

---

[1]The circuit court also terminated the parental rights of the mother, Cassandra Alvarado, but she is not a party to this appeal.

appellant's arrest left R.A. with no caregiver. R.A. was found to be dependent-neglected in an order entered on April 17, 2014. Although the court found that appellant had made "a good deal of progress" between the probable-cause hearing and the adjudication hearing—stable housing, employment, completion of parenting classes, submitting to a psychological evaluation, and visiting regularly—appellant did not fully comply with the case plan after that time. After a review hearing on August 14, 2014, the court found that DHS had made reasonable efforts to provide services but that appellant was then living in a motel in Oklahoma; did not have a stable form of transportation; had submitted to a drug-and-alcohol assessment but had not complied with the recommendation for treatment; and had not visited R.A. on a regular basis.

After a permanency-planning hearing on January 8, 2015, the court again found that appellant had only partially complied with the case plan and orders of the court, noting that he had submitted to random drug screens, but that some had been positive for THC; that he had submitted to a psychological evaluation but had not attended the recommended counseling; and that he had submitted to a drug-and-alcohol assessment but had not attended the recommended treatment. The court also found that appellant had not resolved his criminal charges and had attended only five of the twenty-six court-ordered domestic-violence classes, which had been ordered in his criminal case as a condition of his sentence and with which the circuit court in his case plan had ordered him to comply.

After a fifteen-month review hearing on April 2, 2015, the court found that it was in the best interest of R.A. for the goal of the case to be termination of parental rights and

adoption. The court found that the child had been in foster care since January 7, 2014; that the child was not in the home of a relative; and that neither parent had made significant progress toward reunification. Although appellant was attending therapy, he had not complied with a drug-and-alcohol-assessment recommendation that he complete a twelve-week outpatient treatment program. He had exercised only seven of eleven visits during the review period and had attended only eight of twenty-six domestic-violence classes.

Shortly after that review hearing, on May 3, 2015, appellant was arrested for kidnapping and possession of an incendiary device. DHS filed a petition for termination of parental rights on June 5, 2015, and on June 10, 2015, pursuant to the attorney ad litem's request, due in large measure to appellant's continued criminal behavior, R.A. was placed with her paternal aunt in California.

After a hearing on August 20, 2015, the court found from the bench by clear and convincing evidence that termination was in R.A.'s best interest, specifically noting that she had been out of the home for nineteen months and that appellant was "in no better position than he was the day she came into care." The court found that appellant had not completed domestic-violence classes as ordered, had additional criminal felony charges that could amount to significant imprisonment, had not sought treatment for drug and alcohol issues, was incarcerated at the time of the hearing, had no stable housing or transportation, and that "there was a risk of harm if [R.A.] were to be returned to [him]." The court also specifically found that the child was adoptable.

The court entered an order terminating appellant's parental rights on January 4, 2016,

finding that DHS had proved three grounds for termination by clear and convincing evidence: (1) the child had been adjudicated dependent-neglected, had been out of the parent's custody for twelve months, and the parent had failed to remedy the conditions that caused the child's removal; (2) other factors arose subsequent to the filing of the original petition that demonstrated placement of the child with the parent was contrary to the child's health, safety, or welfare and, despite the offer of appropriate family services, the parent manifested incapacity or indifference to remedying the subsequent issues; and (3) aggravated circumstances: there was little likelihood that services to the family would result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(i), (vii), (ix) (Repl. 2015). The circuit court also found by clear and convincing evidence that it was in the child's best interest to terminate appellant's parental rights, specifically considering adoptability and potential harm. The court found that R.A. was adoptable and that the relatives with whom she had recently been placed intended to pursue adoption. Noting that appellant had not remedied his issues, his circumstances had declined significantly, and he was facing a substantial prison sentence, the court also found that R.A. would be at great risk of harm if returned to him.

We review termination-of-parental-rights cases de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341. In making a "best interest" determination, the trial court is required to consider two factors: (1) the likelihood that the child will be adopted, and (2) the potential of harm to the child if custody

is returned to a parent. *Id*. Adoptability is not an essential element but is rather a factor that the trial court must consider. *Tucker v. Ark. Dep't of Human Servs*., 2011 Ark. App. 430, 389 S.W.3d 1. Likewise, the potential harm to the child is a factor to be considered, but a specific potential harm does not have to be identified or proved by clear and convincing evidence. *Pine v. Ark. Dep't of Human Servs*., 2010 Ark. App. 781, 379 S.W.3d 703. The potential-harm analysis is to be conducted in broad terms. *Id*. It is the "best interest" finding that must be supported by clear and convincing evidence. *Id*. The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs*., 329 Ark. 243, 947 S.W.2d 761 (1997). Credibility determinations are left to the fact-finder. *Schaible v. Ark. Dep't of Human Servs*., 2014 Ark. App. 541, at 8, 444 S.W.3d 366, 370.

For his sole point on appeal, appellant argues that the evidence was insufficient to support the circuit court's finding that termination was in R.A.'s best interest in light of R.A.'s placement with a relative and the fact that he had participated in services throughout the case. He argues that because R.A. had a "permanent placement" with a relative, the court should not have terminated his parental rights.

The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). This need for permanency overrides a parent's request for

additional time to improve circumstances, and courts will not enforce parental rights to the detriment of the well-being of the child. *McElwee v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 214, at 7, 489 S.W.3d 704, 708. Arkansas Code Annotated section 9-27-338(c)(1)–(7) lists the permanency goals that the circuit court is to consider in determining the best interest of the children. The top preference is to return the juvenile to the parents if it is in the best interest of the juvenile and the juvenile's health and safety can be adequately safeguarded if returned home. Ark. Code Ann. § 9-27-338(c)(1)–(3). Adoption is then listed before permanent placement with a relative, unless the juvenile is being cared for by a relative *and termination of parental rights is not in the best interest of the juvenile.* Ark. Code Ann. § 9-27-338(c)(4)&(6).

Appellant argues that the facts of the present case are similar to *Cranford v. Arkansas Department of Human Services*, 2011 Ark. App. 211, 378 S.W.3d 851, in which we reversed the circuit court's finding that it was in the best interest of the child to terminate parental rights where the minor child had been placed with his grandparents. Contrary to our conclusion in *Cranford*, we conclude in this case that the facts support the circuit court's finding that it was in R.A.'s best interest to terminate appellant's parental rights. In *Cranford*, the child was placed with maternal grandparents immediately after the case had been initiated, where the child and his parents had been living before the case had begun. The grandmother testified that they had always played a significant role in the child's life and that, whether there was an adoption or a guardianship, she would like for both parents to remain in the child's life. Here, there was no evidence that R.A. knew the aunt with whom she was placed, and R.A. was not placed

6

with her aunt until two months before the termination hearing. While the caseworker testified that the aunt was interested in pursuing adoption, there was no other evidence regarding this arrangement or whether permanent custody with the aunt without termination of parental rights would have been feasible or in R.A.'s best interest.

Appellant also argues that he participated in the case plan. He did not, however, complete the case plan or comply with court orders that the court deemed important. The court specifically mentioned that appellant had not resolved the criminal charges that had been incurred at the initiation of the case, that he had incurred additional felony charges in Oklahoma, that he was incarcerated at the time of the termination hearing, and that his circumstances had gotten worse since the case had begun despite the offer of services. The court also found that appellant had failed to attend and complete a twelve-week outpatient program that was recommended after his drug-and-alcohol assessment. Finally, R.A. was taken into custody when appellant was arrested for domestic battery, and despite the court's continued orders to do so, appellant had attended a negligible number of domestic-violence classes. Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Ford v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 226, 434 S.W.3d 378. And a parent's past behavior is often a good indicator of future behavior. *Id*.; *Stephens v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 249, 427 S.W.3d 160.

Accordingly, we conclude that the circuit court's ruling that termination of appellant's parental rights was in the child's best interest is not clearly erroneous.



Affirmed.

ABRAMSON and VIRDEN, JJ., agree.

*Tabitha B. McNulty*, Arkansas Public Defender Commission, for appellant.

*Jerald A. Sharum*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by:  *Keith L. Chrestman*, attorney ad litem for minor child.